875 F.2d 383
 57 USLW 2716, 13 Fed.R.Serv.3d 1076,
10 Employee Benefits Ca 2665
 Patrick J. LEDDY, John J. O'Connor, Denis R. Sheil, James F.
Viggiano, John J. Brennan, Alfred Finkel, Theodore King,
Frederick Devine, Frank McHale, Joseph Fater, Irving Mazer,
Kurt Tolksdorf, the Trustees of the New York City District
Council of Carpenters Welfare Fund, New York City District
Council of Carpenters Pension Fund, New York City District
Council of Carpenters Vacation Fund, New York City District
Council of Carpenters Annuity Fund, New York City District
Council of Carpenters Apprenticeship, Journeymen Retraining
Educational and Industry Fund, New York City District
Council of Carpenters Annuity Fund, and New York City
District Council of Carpenters Supplemental Funds
(hereinafter referred to collectively as the Trustees of the
New York City District Council of Carpenters Benefits
Funds), Plaintiffs-Appellees,
v.
STANDARD DRYWALL, INC., Michael Gedell, Defendants-Appellants,
Arnold Koslow, d/b/a "Standard" and Frances Katz, Murray
Koslow, Joseph Koslow, Harvey Shulman, Barry
Shulman, Kevin Ebel, Edward Piccirillo,
and Arthur Giangrande, Defendants.
 No. 811, Docket 87-7185.
 United States Court of Appeals,
Second Circuit.
 Argued Feb. 22, 1989.
Decided May 16, 1989.
 
 Douglas P. Null, Westbury, N.Y., for defendants-appellants.
 David W. Silverman, New York City (Catherine T. O'Toole Lauritano, Granik Silverman Sandberg Campbell Nowicki Resnik, New York City, on the brief), for plaintiffs-appellees.
 Before OAKES, Chief Judge, NEWMAN, Circuit Judge, and LEISURE, District Judge.*
 JON O. NEWMAN, Circuit Judge:
 
 
 1
 Standard Drywall, Inc. ("Standard") and its president, Michael Gedell, appeal from a judgment entered after a bench trial in the District Court for the Eastern District of New York (Leonard D. Wexler, Judge), finding that Standard and Gedell violated Section 515 of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. Sec. 1145 (1982), by fraudulently withholding employee benefit fund contributions that Standard was required to make under terms of its collective bargaining agreement with the New York City District Council of Carpenters ("Carpenters" or "Union").
 
 
 2
 Appellants contend that the doctrines of collateral estoppel and/or res judicata bar a portion of the judgment that was the subject of a prior arbitration and that the District Court improperly reversed a pretrial ruling that had dismissed that portion of the plaintiffs' claim. Appellant Gedell also argues that he should not have been held personally liable for Standard's failure to make benefit fund contributions. For the reasons stated below, we affirm.
 
 Background
 
 3
 Standard is a Brooklyn construction company incorporated in the State of New York. Appellant Gedell is its president and a major shareholder. Between 1978 and 1984, Standard was party to a collective bargaining agreement with the Carpenters requiring Standard to make weekly contributions to the Union's pension, welfare, and fringe benefit funds ("the Funds"), based on the total number of hours worked by carpenters employed by Standard.
 
 
 4
 In 1981, the trustees of the Funds discovered that Standard was not making the required contributions and demanded binding arbitration, as permitted by the collective bargaining agreement. In the arbitration, the Funds contended that Standard had fraudulently used "alter-ego" companies that Standard controlled to conceal the amount of hours worked by Standard employees and thus to evade the benefit contributions required under the collective bargaining agreement.
 
 
 5
 The arbitrator found delinquencies in Standard's contributions to the Funds totaling $84,488.10 for the period through November 23, 1981, but found that the Funds had not proved their allegations concerning the use of alter ego companies. The arbitrator ordered Standard to pay a total of $107,933.25 for the delinquencies, liquidated damages, interest, and attorneys' and arbitrator's fees. Judgment was never entered on the arbitrator's award, although Standard contends that the award was paid.
 
 
 6
 On May 4, 1983, the Funds filed suit against Standard and Gedell in District Court for the Eastern District of New York alleging that the defendants conspired to defraud the Funds and violated ERISA by withholding required benefit fund contributions. Before trial, Standard and Gedell moved for partial summary judgment on the ground that the claims for the period through November 23, 1981 were barred from relitigation because they had been the subject of the prior arbitration. In a written memorandum and order, the District Judge granted the motion for partial summary judgment based on res judicata but, eschewing even the possibility of invoking Fed.R.Civ.P. 54(b), instructed the Clerk not to enter the order as a judgment.
 
 
 7
 While the partial summary judgment motion was pending, a federal grand jury in the Eastern District of New York indicted Standard, Gedell, and other Standard officials, charging them with various criminal violations in connection with the scheme to defraud the Carpenters' Funds by using dummy corporations to conceal the amount of benefit contributions owed under the collective bargaining agreement. Standard and Gedell subsequently pleaded guilty to several counts of the indictment, including fraud on the part of Standard and conspiracy to defraud on the part of Gedell and other officials. The Funds then amended their complaint to include allegations relating to the charges contained in the indictment, and the guilty pleas were admitted in evidence at trial.
 
 
 8
 At the beginning of the bench trial, the defendants objected to the introduction of testimony by auditors concerning delinquent contributions for the period before November 23, 1981, contending that the District Judge had already ruled that claims relating to that period were barred by res judicata. Judge Wexler overruled the objection, saying he would "hear it all and then sift [it] out." He assured the defendants that he was "keying in" on the dates.
 
 
 9
 After the trial, the District Judge found Standard and Gedell liable for withholding benefit contributions and ordered the defendants to pay a total of $71,924.45 for the unpaid contributions, interest, and liquidated damages pursuant to 29 U.S.C. Sec. 1132(g)(2), and legal fees and costs. The judgment included an award for the period prior to November 23, 1981. The District Judge's opinion made no mention of defendants' res judicata/collateral estoppel defense or the pretrial ruling that the defense was valid. The District Judge also rejected, without comment, a motion by the defendants to amend the judgment to take into account the pretrial ruling.
 
 Discussion
 1. Preclusive Effect of Arbitration Award
 
 10
 Appellants contend that the District Court erred in rejecting their defense of collateral estoppel or res judicata for the period before November 23, 1981. Appellants argue that the Funds' claims for that period, including the allegation that Standard fraudulently used alter ego companies to evade its contractual obligations, were fully litigated in the arbitration.
 
 
 11
 Arbitration proceedings can, but do not necessarily, have preclusive effect on subsequent federal court proceedings. See Dean Witter Reynolds Inc. v. Byrd, 470 U.S. 213, 223, 105 S.Ct. 1238, 1243, 84 L.Ed.2d 158 (1985); Benjamin v. Traffic Executive Association Eastern Railroads, 869 F.2d 107 (2d Cir.1989). Here, however, we need not reach the issue of whether an arbitration award should be given preclusive effect by a federal court adjudicating an ERISA claim. Appellants concede that the arbitrator's award on the contract claim, which was governed by New York law, was never confirmed and entered as a judgment pursuant to N.Y.Civ.Prac.L. & R. 7510 & 7514 (McKinney 1980). Under New York law, it is the judgment entered on an arbitration award that is given preclusive effect in subsequent litigation. See Springs Cotton Mills v. Buster Boy Suit Co., 275 A.D. 196, 88 N.Y.S.2d 295, 298 (1st Dep't), aff'd, 300 N.Y. 586, 89 N.E.2d 877 (1949). An arbitration award that is not filed and confirmed in an appropriate court is without effect. Flora Fashions Inc. v. Commerce Realty Corp., 80 N.Y.S.2d 384, 386 (Sup.Ct.1948).
 
 
 12
 Even if the arbitrator's award had been entered as a judgment, its preclusive effect would be doubtful. The evidence suggests that the arbitrator did not have an opportunity fully and fairly to review the Funds' claim because Standard and Gedell continued during the arbitration to conceal their fraud. See Commissioner v. Sunnen, 333 U.S. 591, 597, 68 S.Ct. 715, 719, 92 L.Ed. 898 (1948) ("A judgment puts an end to the cause of action, which cannot again be brought into litigation between the parties upon any ground whatever, absent fraud or some other factor invalidating the judgment.") (emphasis added); Restatement (2d) Judgments Sec. 26 Comment j (1980). We need not decide the significance of appellants' conduct during the arbitration proceeding, however, since the failure to enter the arbitration award as a judgment is sufficient to bar any preclusive effect.[1]
 
 2. Pretrial Ruling on Res Judicata
 
 13
 Appellants further contend that even if the litigation of the claims relating to the period prior to November 23, 1981 was not barred by collateral estoppel or res judicata, those claims were effectively removed from the case by the District Court's pretrial ruling. We disagree.
 
 
 14
 Judge Wexler specifically ordered the Clerk not to enter his pretrial ruling as a judgment. It is by no means clear that the amount sought for the period before November 23, 1981, was the subject of a distinct "claim" that would have supported a Rule 54(b) judgment. In any event, Rule 54(b) explicitly provides that in the absence of entry of a final judgment, "any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties ... is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties." Fed.R.Civ.P. 54(b) (emphasis added); see also Schering Corp. v. Schering Aktiengesellschaft, 667 F.Supp. 175, 185 (D.N.J.1987).
 
 
 15
 Appellants are correct, however, that the District Judge did not follow proper procedures in the aftermath of the pretrial ruling. Rule 56(d) specifies that if summary judgment pursuant to Rule 56 is rendered on less than an entire case and a trial on the remaining claims is necessary, the court
 
 
 16
 shall if practicable ascertain what material facts exist without substantial controversy and what material facts are actually and in good faith controverted. It shall thereupon make an order specifying the facts that appear without substantial controversy, including the extent to which the amount of damages or other relief is not in controversy, and directing such further proceedings in the action as are just. Upon the trial of the action the facts so specified shall be deemed established, and the trial shall be conducted accordingly.
 
 
 17
 Fed.R.Civ.P. 56(d) (emphasis added).
 
 
 18
 Once a district judge issues a partial summary judgment order removing certain claims from a case, the parties have a right to rely on the ruling by forbearing from introducing any evidence or cross-examining witnesses in regard to those claims. If, as allowed by Rule 54(b), the judge subsequently changes the initial ruling and broadens the scope of the trial, the judge must inform the parties and give them an opportunity to present evidence relating to the newly revived issue. Failure to do so might in some circumstances cause substantial prejudice.
 
 
 19
 Here, the District Judge apparently intended his Memorandum and Order granting appellants partial summary judgment on the pre-November 23, 1981, claims to be the order called for under Rule 56(d). If that is so, however, he did not give appellants clear notice that he was revising that order nor an adequate opportunity to adjust the presentation of their case once he decided not to follow the order. Appellants did not learn that the pre-November 23, 1981, claims were back in the case until the trial was over and the District Judge imposed liability for that period.
 
 
 20
 Nonetheless, the error did not substantially prejudice the appellants. Appellants conceded at oral argument that even had they been aware that the pre-November 23, 1981, claims remained in the case, they had no other evidence they would have presented. The error was therefore harmless and does not require reversal. Fed.R.Civ.P. 61.
 
 3. Individual Liability of Gedell
 
 21
 The District Court held Gedell jointly and severally liable for the entire judgment. Gedell contends that ERISA does not expose shareholders and corporate officers to liability for the unpaid benefit-fund contributions owed by corporations unless, under traditional common law principles, the corporation and the officer are "alter egos," thus justifying "piercing the corporate veil." He argues that the proof at trial was not sufficient to prove that he and Standard were "alter egos," and that he should therefore not be liable for Standard's corporate obligations.
 
 
 22
 We agree with Gedell that the District Court did not make sufficient findings for a conclusion to pierce the corporate veil under traditional common law principles, nor was there sufficient proof at trial that would support such a conclusion. But this does not absolve Gedell of liability.
 
 
 23
 Section 515 of ERISA imposes an obligation to make contributions to employee benefit funds on "every employer who is obligated to make contributions ... under the terms of a collectively bargained agreement." 29 U.S.C. Sec. 1145. The term "employer" is defined as "any person acting directly as an employer, or indirectly in the interest of an employer, in relation to an employee benefit plan." 29 U.S.C. Sec. 1002.
 
 
 24
 This broad definition of "employer" appears to be modeled on nearly identical language in the Fair Labor Standards Act (FSLA), see 29 U.S.C. Sec. 203(d) (1982), which, like ERISA, is designed to protect employees. In FLSA cases, courts have consistently held that a corporate officer with operational control who is directly responsible for a failure to pay statutorily required wages is an "employer" along with the corporation, jointly and severally liable for the shortfall. See Donovan v. Agnew, 712 F.2d 1509, 1511 (1st Cir.1983) (citing cases); see also Donovan v. Sovereign Security, Ltd., 726 F.2d 55, 59 (2d Cir.1984).
 
 
 25
 Despite the similarities between ERISA and FLSA, however, a number of courts have held that ERISA does not render corporate officers personally liable for a company's unpaid benefit-fund contributions unless the officers and the company are "alter egos" under traditional common law principles. See, e.g., Massachusetts Laborers' Health and Welfare Fund v. Starrett Paving Corp., 845 F.2d 23, 25 (1st Cir.1988); International Brotherhood of Painters v. George A. Kracher, Inc., 856 F.2d 1546 (D.C.Cir.1988); Solomon v. Klein, 770 F.2d 352 (3d Cir.1985); Audit Services, Inc. v. Rolfson, 641 F.2d 757, 764 (9th Cir.1981); but see Gambino v. Index Sales Corp., 673 F.Supp. 1450 (N.D.Ill.1987).
 
 
 26
 The rationale for distinguishing the statutes in this respect, as expressed by the D.C. Circuit, is that FLSA commands employers to pay specified wages, whereas ERISA does not require employers to provide pension plans; the obligation to do so, and to contribute to them, springs from a privately-made contract embodied in a plan or a collective bargaining agreement. International Brotherhood of Painters, 856 F.2d at 1549. We need not decide in this case, however, whether to accept that rationale or whether to equate the scope of individual liability under ERISA and FLSA. Gedell was not merely a major shareholder and controlling officer of a company that neglected to make required benefit plan contributions. He and other Standard officials engaged in a criminal conspiracy to defraud the Funds, as Gedell admitted in pleading guilty to the indictment.
 
 
 27
 As we recently noted in another ERISA case:
 
 
 28
 The Supreme Court has consistently refused to give effect to the corporate form where it is interposed to defeat legislative policies. In determining whether to disregard the corporate form, we must consider the importance of the use of that form in the federal statutory scheme, an inquiry that generally gives less deference to the corporate form than does the strict alter ego doctrine of state law.
 
 
 29
 Lowen v. Tower Asset Management, Inc., 829 F.2d 1209, 1220 (2d Cir.1987) (quotation and citations omitted). ERISA was enacted to promote the interests of employees and their beneficiaries in employee benefit plans and to protect contractually defined benefits. Firestone Tire & Rubber Co. v. Bruch, --- U.S. ----, 109 S.Ct. 948, 955, 103 L.Ed.2d 80 (1989). Shielding from liability a controlling corporate official who, like Gedell, deliberately flouts ERISA obligations by conspiring to defraud employee pension and welfare plans would surely defeat this legislative purpose. We therefore hold that at least to the extent that a controlling corporate official defrauds or conspires to defraud a benefit fund of required contributions, the official is individually liable under Section 502 of ERISA, 29 U.S.C. Sec. 1132, just as he would be liable for unpaid minimum wages under FLSA, even if the traditional conditions for piercing the corporate veil are not met.[2] Though Gedell could have been found liable for fraud damages for his role as a coconspirator in the corporation's fraud, cf. L.C.L. Theatres, Inc. v. Columbia Pictures Industries, 619 F.2d 455, 457 (5th Cir.1980); 3A W. Fletcher, Cyclopedia of the Law of Private Corporations, Sec. 1137 (rev. perm. ed. 1986), his liability under ERISA itself subjects him to the statutory consequences, including liquidated damages and attorney's fees.
 
 
 30
 The judgment of the District Court is affirmed.
 
 
 
 *
 The Honorable Peter K. Leisure of the United States District Court for the Southern District of New York, sitting by designation
 
 
 [1]
 No issue has been raised before us concerning the extent to which the defendants may be entitled to a credit for sums paid pursuant to the arbitration award. The record does not indicate whether the pre-November 23, 1981, sums included in the District Court's judgment are limited to sums to which the Funds are entitled over and above the sums awarded by the arbitrators. If any disputes on these matters arise, they may be presented to the District Court
 
 
 [2]
 To the extent that Laborers' Clean-Up Contract Administration Trust Fund v. Uriarte Clean-Up Service, 736 F.2d 516, 524 n. 12 (9th Cir.1984), is inconsistent with our holding, we respectfully disagree