CEMENT AND CONCRETE WORKERS DISTRICT COUNCIL WELFARE FUND, PENSION FUND, LEGAL SERVICES FUND AND ANNUITY FUND; William R. Soracco, in his fiduciary capacity as Administrator of the Cement and Concrete Workers District Council Welfare Fund, Pension Fund, Legal Services Fund and Annuity Fund; and Thomas Madera, as President of the Cement and Concrete Workers District Council, Plaintiffs–Appellees/Cross–Appellants,

v.

Steven R. LOLLO and Jeffrey E. Lollo, Defendants–Appellants/Cross–Appellees,

Peter Lollo; John A. Lollo; Lawrence Lollo; Gerard M. Lollo; and Jeffrey E. Lollo as Personal Representative of Anthony F. Lollo, Deceased, Defendants/Cross-Appellees.

Nos. 941, 1142, Dockets 93–7845, –7847.

United States Court of Appeals, Second Circuit.

Argued Jan. 10, 1994.

Decided June 16, 1994.

Amended Opinion Filed After Petition for Rehearing Sept. 9, 1994.

Andrew C. Morganstern, Mineola, NY, for defendants-appellants/cross-appellees.

Joseph S. Kaming, New York City (Elizabeth C. Kaming, Sean O'Donnell, Kaming & Kaming, of counsel), for plaintiffs-appellees/cross-appellants.

Douglas A. Cooper, New Rochelle, NY (Deborah R. Beckman, Cooper & Cooper, of counsel), for amicus curiae, Frederick DeMatteis and Richard DeMatteis.

Before: WINTER, WALKER, and JACOBS, Circuit Judges.

WALKER, Circuit Judge:

Defendants Steven and Jeffrey Lollo appeal from a judgment of the United States District Court for the Eastern District of New York (Eugene H. Nickerson, *Judge*) holding them individually liable for violating the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001 *et seq.* ("ERISA"), and for breaching a collective bargaining agreement based on their actions as officers of a corporation that failed to pay ERISA contributions and union dues check-off monies. The president of the union, its ERISA funds, and the funds' administrator cross-appeal from that part of the judgment which ruled that other corporate officials could not be held personally liable under the collective bargaining agreement. We reverse the part of the judgment that holds Steven Lollo liable for violating ERISA, affirm the part of the judgment that holds Jeffrey Lollo responsible for non-payment under the parties' 1987 collective bargaining agreement, and remand for further proceedings consistent with this opinion.

## BACKGROUND

Plaintiffs consist of the President of the Cement and Concrete Workers District Council (the "Union"), several of the Union's ERISA funds (the "Funds"), and the Administrator of the Funds. Defendants are seven individuals who operated and were employed by a family construction business first known as Gerard Lollo & Sons, Inc., and then as Lollo Brothers, Inc. ("Lollo, Inc."). Anthony F. Lollo, now deceased, was the President and a 51% shareholder of Lollo, Inc. His brother Lawrence owned the remaining 49% of the company and served as its Vice President. A third brother, Peter, acted as Lollo, Inc.'s bookkeeper and was either an actual or *de facto* treasurer. Anthony Lollo's two sons, Steven and Jeffrey, were also intimately involved in the family business. Jeffrey became president of the company in July 1987 when his father retired; Steven acted as a vice president, although there is dispute over whether he actually held this title. Although listed as defendants, Gerard Lollo, Jeffrey and Steven's grandfather, and John Lollo, their brother, never became involved

in this case and all claims against them were voluntarily dismissed.

Plaintiffs brought this suit seeking to hold defendants personally liable for unpaid contributions owed to the Funds and union dues owed to the Union under collective bargaining agreements entered into between Lollo, Inc. and the Union for the periods from July 1, 1984 to June 30, 1987 (the "1984 CBA") and from July 1, 1987 to June 30, 1990 (the "1987 CBA"). Both agreements provided that Lollo, Inc., as an employer under ERISA, would contribute to the Funds based on employee work hours and would honor employees' decisions to have union "check-off" dues withheld from their paychecks and turned over directly to the Union. Plaintiffs' complaint alleges that defendants breached the collective bargaining agreements, committed fraud, misappropriated plaintiffs' funds, violated ERISA, and engaged in a pattern of racketeering activity aimed at depriving the Funds and Union of monies in violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.*

Plaintiffs moved for summary judgment on the first count of their complaint pertaining to the 1984 CBA against Steven and Anthony Lollo, and on the second count pertaining to the 1987 CBA against all of the Lollo defendants save Gerard and John. Steven appeals from the district court's grant of summary judgment on count one holding him liable for Lollo, Inc.'s obligations to the Funds under the 1984 CBA. Jeffrey appeals from summary judgment holding him liable for Lollo, Inc.'s obligations to the Union and the Funds under the 1987 CBA. Plaintiffs cross-appeal from the court's grant of summary judgment in favor of Peter, Lawrence, Steven, and Anthony Lollo (whose estate is now represented by Jeffrey Lollo) exonerating them from liability on plaintiffs' claim under the 1987 CBA.

## DISCUSSION

 In order to prevail on a motion for summary judgment, the moving party must show that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *See Celotex Corp.*

*v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); Fed.R.Civ.P. 56(c). In deciding such a motion, the district court "must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Consarc Corp. v. Marine Midland Bank, N.A.,* 996 F.2d 568, 572 (2d Cir.1993). We review a district court's grant of summary judgment *de novo. Westinghouse Elec. Corp. v. New York City Transit Auth.,* 14 F.3d 818, 821 (2d Cir.1994).

## I. The Claim Under the 1984 CBA

Plaintiffs' first claim is denominated as the "Fund's Claim Against Individual Defendants as Employers." The district court construed this as a cause of action by plaintiff Soracco, as a fiduciary of the Funds, under § 515 of ERISA, 29 U.S.C. § 1145, to hold Steven and Anthony Lollo responsible for defrauding the Funds of contributions owed under the 1984 CBA. In ruling on this claim, the district court found it to be undisputed that from August 1986 to June 1987, in connection with a construction project on which Union members had worked, Steven Lollo submitted to a general contractor, R.G. Madison Corp., payment requisition forms that falsely stated that no money was owed to the Funds under any collective bargaining agreement. The district court further found that Steven and Anthony both knew that these submissions were false; that by making these false submissions, Steven and Anthony obtained several million dollars in payments for the corporation; and that no money was withheld from these payments to cover contributions owed to the Funds. Relying on *Leddy v. Standard Drywall, Inc.,* 875 F.2d 383 (2d Cir.1989), the district court held both Steven and Anthony liable for amounts due to the Funds for this time period. On appeal, Soracco pursues judgment on this claim only against Steven.

 In *Leddy,* we held that "to the extent that a controlling corporate official defrauds or conspires to defraud a benefit fund of required contributions, the official is individually liable under Section 502 of ERISA, 29 U.S.C. § 1132." *Id.* at 388. The district court held Steven liable under this standard

because the undisputed facts established that (1) he acted as a vice president of Lollo, Inc., and (2) he submitted requisition payment forms to a general contractor that falsely stated that all outstanding claims for union benefits had been paid in full. We disagree with the district court's conclusion that these facts, without further support, are sufficient to hold Steven liable under *Leddy*.

The first question is whether Steven qualified as a "controlling corporate official." *Leddy* does not provide a clear test for determining who fits this description. Rather, that decision, the first in this circuit to hold a corporate officer responsible for his company's unpaid ERISA contributions, relied upon cases under the Fair Labor Standards Act that imposed liability on "a corporate officer with operational control who is directly responsible for a failure to pay statutorily required wages." *Id.* at 387. Drawing from this standard, we proceeded to impose liability on a corporate officer who was a president and shareholder of his company and who acknowledged his culpability for the corporation's wrongdoings by pleading guilty to an indictment charging him with conspiring with the company to defraud an ERISA fund of contributions owed under a collective bargaining agreement. We justified our decision by noting that the defendant had deliberately flouted ERISA obligations and did not deserve the protection of the corporate form. *Id.* at 388.

■ In this case, the district court held that individual liability attached to Steven because he served as a company vice president with authority to sign checks on behalf of Lollo, Inc. However, as we held in *Sasso v. Cervoni*, 985 F.2d 49, 50 (2d Cir.), *cert. denied*, — U.S. —, 113 S.Ct. 2964, 125 L.Ed.2d 664 (1993), an individual cannot be held "liable for corporate ERISA obligations solely by virtue of his role as officer, shareholder, or manager." Beyond his status within the corporate structure, the district court must examine the officer's actual role in the company's affairs and relationship to the company's wrongdoing.

■ The facts pertaining to these additional issues are sharply disputed. While Soracco alleges that Steven was a principal of Lollo, Inc. with direct responsibility for the company's fraudulent non-payment of bargained-for contributions, Steven responds that operational control of the family company lay elsewhere, principally with his father, Anthony, and that he had no decisional authority over payment of ERISA contributions. His affidavit states that he "could only sign checks with the direction and consent of [his] father"; that he "did not have the authority to direct payment to the plaintiff[s]"; and that his "father ruled the company with an iron hand and twice [Steven] was fired for disobeying him." Since the district judge was required on summary judgment to draw all inferences on the motion in Steven's favor, it was error on this record to conclude that the uncontroverted facts established that Steven was a controlling corporate official.

■ We turn next to whether the district court correctly determined that the material facts were undisputed to the effect that Steven "defrauded" the Funds. The district court found this to be the case because Steven "falsely stated that the Funds had been paid in order that Lollo, Inc., receive payment from R.G. Madison" and "thereby directly benefited the corporation as well as himself as one who received compensation from [it]." We believe that these findings are insufficient to hold Steven responsible under *Leddy* as a matter of law. In order to prove a fraud claim, Soracco must demonstrate "1) a material false representation or omission of an existing fact, 2) made with knowledge of its falsity, 3) with an intent to defraud, and 4) reasonable reliance, 5) that damages plaintiff[s]." *Diduck v. Kaszycki & Sons Contractors, Inc.*, 974 F.2d 270, 276 (2d Cir.1992). In this case, there are factual disputes as to a number of these factors.

For example, Soracco alleges that Steven was aware that the requisition forms he submitted between August 1986 and June 1987 were false; however, Steven claimed in his deposition that although he knew sometime in 1986 that Lollo, Inc. owed money to the Funds, he did not know in August of 1986 that there was money owed to the Funds in connection with the R.G. Madison construction job. If Steven's statements are credited,

as they must be for purposes of the summary judgment motion, then a dispute exists as to whether he knew that all of the requisition forms in question were false.

A second controverted issue is whether Steven intended to commit fraud. Soracco alleges that Steven knew that the requisition forms were false and that he purposely submitted them in order to receive money from R.G. Madison without having to honor the company's obligations to the Funds. However, Soracco has submitted no proof regarding Steven's intentions. For his part, Steven alleges that he never exercised control over the funds received from R.G. Madison and that he never participated in a scheme to defraud the plaintiffs. If all inferences are drawn in Steven's favor, one could conclude that he lied for the limited purpose of receiving payment from R.G. Madison, but never intended to withhold from the Funds the portion of the payment that was owed to them. On the basis of the present record, we are unable to conclude that Steven's intent to lie to R.G. Madison can be equated with his intent to defraud the Funds; Soracco must prove this latter element at trial.

■ A third issue for resolution is whether the Funds relied on Steven's misrepresentations. It is not apparent to us that the Funds were ever deceived by Steven's false statements. To the contrary, Steven has asserted that the Union at all times was fully aware of the company's missed payments, that the Union and the company were actively engaged in negotiations during the relevant period to rectify the company's delinquencies, and that the parties even entered into a modification agreement to the 1984 CBA to alter the company's payment schedule. While we reject defendants' argument that this modification agreement relieved Steven of the obligation to tell the truth on the payment requisition forms, we believe that, if credited, Steven's allegations create a triable issue as to whether plaintiffs relied on his false statements to the general contractor.

The Funds' fraud claim, at least at this point in the litigation, is factually dissimilar to the fraud presented in *Leddy,* where the corporate official lied directly to the Funds about the number of hours worked by union employees in order to evade paying contributions under the collective bargaining agreement. Here, the district court found only that Steven lied to a third party about his company's unpaid obligations to the Funds. This finding is itself insufficient to impose liability on Steven in favor of the Funds. However, we are not prepared to foreclose the possibility that the Funds will be able to demonstrate reliance on their part or that Steven's misrepresentations were part of a more elaborate scheme to defraud the Funds of bargained-for contributions. We hold simply that summary judgment was not appropriate on the state of the present record, and accordingly remand the Funds' claim under the 1984 CBA for further proceedings consistent with this opinion.

## II. The Claim Under the 1987 CBA

Plaintiffs' second cause of action is denominated in the complaint as the "Union's Claim against Individual Defendants." The district court construed this as a claim for "contributions" under the 1987 CBA by both the Funds and the Union. Based on its review of the 1987 CBA, the district court awarded judgment against Jeffrey Lollo, the only signatory to the agreement, but not against the other Lollo defendants. We affirm.

Plaintiffs argue that all of the individual Lollos are responsible for Lollo, Inc.'s obligations under the 1987 CBA because they qualify as "employers" within the meaning of §§ 3(5) and 515 of ERISA, 29 U.S.C. §§ 1002(5) and 1145, and § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185. The district court explicitly analyzed only the § 301 issue.

### A. Plaintiffs' Claim Under § 301 of the LMRA

■ Section 301 authorizes suits for the violation of a contract between an employer and a labor organization representing employees in an industry affecting commerce. *See* 29 U.S.C. § 185(a). The Union is clearly authorized to sue under § 301; plaintiff Soracco, as administrator of the Funds, may sue on behalf of the Funds as

third party beneficiaries of the collective bargaining agreement. *See Benson v. Brower's Moving & Storage, Inc.,* 907 F.2d 310, 313 (2d Cir.), *cert. denied,* 498 U.S. 982, 111 S.Ct. 511, 112 L.Ed.2d 524 (1990). Although federal law governs disputes arising under § 301, we previously recognized in *Lerner v. Amalgamated Clothing & Textile Workers Union,* 938 F.2d 2 (2d Cir.1991), that "state law, 'if compatible with the purpose of § 301, may be resorted to in order to find the rule that will best effectuate the federal policy'" and adopted the law of New York to resolve a claim against a corporate president for monies owed under a collective bargaining agreement. *Id.* at 5 (quoting *Textile Workers Union v. Lincoln Mills,* 353 U.S. 448, 457, 77 S.Ct. 912, 918, 1 L.Ed.2d 972 (1957)). "Under New York law, an agent who signs an agreement on behalf of a disclosed principal will not be individually bound to the terms of the agreement 'unless there is clear and explicit evidence of the agent's intention to substitute or superadd his personal liability for, or to, that of his principal.'" *Id.* at 5 (quoting *Mencher v. Weiss,* 306 N.Y. 1, 4, 114 N.E.2d 177 (1953)). The factors to be examined in assessing the signatory's intention include the length of the contract, the location of the liability provision(s) in relation to the signature line, the presence of the signatory's name in the agreement itself, the nature of the negotiations leading to the contract, and the signatory's role in the corporation. *See id.*

■ Judge Nickerson properly determined on the basis of undisputed facts that Article XXV of the 1987 CBA imposed personal liability on Jeffrey Lollo. Article XXV of the agreement expressly stated that the signatory signs

> in a dual capacity both on behalf of himself and on behalf of the Employer and represents by his signature his authority to bind himself, the Employer or Firm, and the principals and members thereof. The person signing on behalf of the Employer also agrees to be personally bound by and to assume all obligations of the Employer provided for in this Agreement.

This provision unequivocally fixes personal liability on the signatory and is prominently displayed immediately above the signature line. Moreover, defendants do not dispute the Union's assertion that the provision was expressly bargained for and reached after much negotiation. Finally, although Jeffrey's name was not included in the text of the agreement, it was written into the contract above the signature line, and it is undisputed that Jeffrey had the authority to sign on behalf of the company as its President and on behalf of himself. Based on these factors, we agree with the district court's determination that Article XXV bound Jeffrey Lollo personally for the obligations owed by the company to the Union and the Funds under the 1987 CBA.

■ We also agree with the district court that the other Lollo defendants should not be held personally liable on the basis of the terms found in the 1987 CBA. Plaintiffs' claim against the other Lollos relies on Article X, § 8(e), which states that:

> The President, Vice President, Secretary–Treasurer, individual partner, employee of the partnership, officer, stockholder, proprietor or employee of the corporation, company, joint venture or proprietorship acknowledges that he or she is vested with the authority and control over the submission of reports and/or payment of contributions to the [Funds] and acknowledges that he or she shall be personally and individually obligated to submit the required reports and/or pay the required contributions to the [Funds] for all work performed by Employees.

This provision is located on page 34 of a 55–page contract and does not identify who, exactly, will be bound by it. Nowhere in the agreement are the holders of the referenced offices denominated, and nowhere do the names of Peter, Lawrence, Steven and Anthony Lollo appear. In addition, the clause attempts to foist personal liability for Lollo, Inc.'s obligations on any "employee" of the company, a generalization which makes the validity of the clause suspect. The absence of signatures by any of the Lollo defendants besides Jeffrey further erodes the force of this provision since the agreement lacks a signed intention by the remaining Lollo defendants to assume the company's debts.

Plaintiffs alternatively argue that Jeffrey's signature is sufficient to bind his family members because Article XXV, previously quoted, states that the signatory "represents by his signature his authority to bind himself, the Employer or Firm, and the principals and members thereof." However, this phrase is ambiguous because the contract never identifies the "principals and members" of the Firm. Moreover, it does not clearly indicate that the other Lollo defendants agreed to accept personal liability for the company's obligations. Given the presumption in *Lerner* against finding personal liability absent an express assumption of such responsibility, we think the district court's ruling was correct in denying summary judgment against the other Lollo defendants for non-payment of union dues and fund contributions.

Accordingly, we hold that of the Lollo defendants, only Jeffrey is properly held liable under § 301 of the LMRA for the payment of union check-off dues and ERISA contributions owed under the 1987 CBA.

### B. Plaintiffs' Claim Under § 515 of ERISA

We turn next to the liability of the individual Lollos under ERISA. Analysis of this issue is necessary because, in addition to recovery of unpaid union dues and pension contributions under § 301 of the LMRA, plaintiffs claim the right to ERISA penalties on their judgment for the 1987 CBA claim. These statutory damages are only available in an action "by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded." 29 U.S.C. § 1132(g)(2). Accordingly, the penalties, which include interest, liquidated damages, reasonable attorney's fees, and costs, are only available if Soracco, as a fiduciary of the Funds, obtains a favorable judgment under § 1145.

We decide for the first time whether a corporate officer who assumes responsibility for his company's ERISA obligations as part of a collective bargaining agreement qualifies as an "employer who is obligated to make contributions to a multiemployer plan" as specified under § 1145. Our prior cases have imposed individual liability for ERISA obligations only in those extraordinary cases where the defendant has committed fraud, as in *Leddy,* or acted in concert with a fiduciary to breach a fiduciary obligation, as in *Diduck* and *Lowen v. Tower Asset Management, Inc.,* 829 F.2d 1209, 1220 (2d Cir.1987). *See Sasso,* 985 F.2d at 50–51. Although Soracco asserted a colorable claim of fraud in relation to the 1984 CBA, no such allegations have been made in connection with the 1987 CBA. Our analysis thus focuses solely on whether defendants are liable under the express terms of § 1145.

In *Massachusetts Laborers' Health & Welfare Fund v. Starrett Paving Corp.,* 845 F.2d 23, 25 (1st Cir.1988) (Breyer, J.), the First Circuit held that § 1145 permits recovery only against those employers who are already obligated, in the absence of ERISA, to make ERISA contributions. We agreed with this interpretation in *Sasso, see* 985 F.2d at 50, and now reaffirm our endorsement of the First Circuit's reasoning. Looking at the plain language of § 1145, then-Judge, now-Justice Breyer observed that the statute applied only to employers "obligated" to make contributions. Thus, he reasoned, the employer's obligation had to arise from a source other than ERISA since the existence of the obligation was a precondition to the duty arising under § 1145. This interpretation is reinforced by the section's legislative history, which stated in a report produced by the Senate Committee on Labor that " '[t]he bill imposes a Federal statutory duty to contribute on employers that are *already contractually* obligated to make contributions to multiemployer plans.' " 845 F.2d at 25 (quoting Staff of Senate Committee on Labor and Human Resources, 96th Cong., 2d Sess., The Multiemployer Pension Plan Amendments Act of 1980: Summary and Analysis of Consideration 44 (Comm. Print.1980)) (emphasis added by First Circuit); *see also id.* (quoting similar statement made in floor debate by chief sponsor in the House of Representatives). The First Circuit thus concluded, and we agree, that § 1145 does not impose a duty to make pension contributions, even on one who qualifies as an "employer" under the general defini-

tion provided in 29 U.S.C. § 1002(5), if the duty to contribute did not previously exist.

This principle accords with other cases finding corporate officers not liable for their companies' ERISA obligations in part because they did not assume personal responsibility for the contributions. *See, e.g., Rockney v. Blohorn,* 877 F.2d 637, 643 (8th Cir. 1989) (Corporate officers "could be personally liable under ERISA if the terms of the plan imposed such liability on them."); *Scarbrough v. Perez,* 870 F.2d 1079, 1083 (6th Cir.1989) ("[T]here has been no showing that [defendant] ever personally assumed any obligation to make contributions to the plans on behalf of [his company]."); *International Bhd. of Painters v. George A. Kracher, Inc.,* 856 F.2d 1546, 1550 (D.C.Cir.1988) ("There is nothing in the legislative history that suggests that Congress meant to expand that liability beyond parties who in a plan or collective bargaining agreement obligated themselves to make those contributions.").

██ *Starrett Paving* held that where the owner of a corporation "had not *himself* promised to make the relevant pension contributions," and there was no allegation that he was the corporation's alter ego, there was no basis to hold him liable under § 1145. 845 F.2d at 24–25. By contrast, in this case Jeffrey personally assumed the obligations of Lollo, Inc. As discussed earlier, by signing the 1987 CBA, Jeffrey became contractually obligated, wholly independently of ERISA, to make pension contributions. As such, he qualifies as "an employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement" pursuant to § 1145, and is liable for Soracco's claim to enforce this obligation under 29 U.S.C. § 1132, as well as for the statutory penalties available under that section. As we have ruled that there is no basis in the 1987 CBA for imposing personal liability on the other Lollo defendants, they do not qualify as employers already contractually obligated to make pension contributions and cannot be held liable under § 1145.

While affirming the district court's holding on this claim, we remand so that the district judge may ensure that the ERISA penalties

available under 29 U.S.C. § 1132(g) were calculated only with reference to that portion of the judgment representing unpaid contributions. Defendants assert that ERISA penalties were calculated based on the entire amount awarded under the 1987 CBA, and there is no way for us to evaluate this statement since the judgment does not distinguish between monies owed to the Union under § 301 of the LMRA and monies owed to the Funds under § 515 of ERISA. We have considered the parties' remaining arguments and find them to be without merit.

CONCLUSION

For the foregoing reasons, we reverse that part of the judgment holding Steven Lollo liable for violating ERISA, affirm that part of the judgment holding Jeffrey Lollo solely responsible for payment of unpaid ERISA contributions and union dues owed under the 1987 CBA, and remand for further proceedings consistent with this opinion.