BUFFALO CARPENTERS PENSION FUND, Buffalo Carpenters Health Care Premium Fund, and Carpenters District Counsel of Buffalo, New York, Plaintiffs,

v.

CKG CEILING AND PARTITION COMPANY, INC.; and Charles Stephan, Individually and as an Officer of CKG Ceiling and Partition Company, Inc., Defendants.

No. 95–CV–1024C.

United States District Court,
W.D. New York.

March 25, 2000.

Chamberlain, D'Amanda, Oppenheimer & Greenfield (Matthew J. Fusco, of counsel), Rochester, NY, for plaintiffs.

Altreuter & Habermehl (Catherine Habermehl, of counsel), Buffalo, NY, for defendants.

## DECISION AND ORDER

CURTIN, District Judge.

### INTRODUCTION

In the present action, plaintiffs Buffalo Carpenters Pension Fund and Buffalo Carpenters Health Care Fund ("plaintiffs" or "plaintiff funds") allege that defendants CKG Ceiling and Partition Co., Inc. ("CKG") and Charles Stephan violated certain collective bargaining agreements by failing to pay required contributions to the plaintiff funds. Item 1.

Presently before the court is plaintiffs' Rule 37 motion to strike defendants' answer or to compel discovery. Item 25. Plaintiffs claim that they brought this motion after years of unsuccessfully attempting to secure basic discovery from defendants. Defendants have filed opposing papers, Items 28–29, and plaintiffs have had an opportunity to reply. Item 31. On December 3, 1999, the court heard oral argument. Plaintiffs subsequently filed further submissions discussing whether Charles Stephan could be held personally liable for the contributions that are allegedly owed. Items 33–34. More recently, the court has received a further submission from defendants. Item 36. Having considered the parties submissions and arguments, the court now denies plaintiffs' motion to strike defendants' answer, grants plaintiffs' motion to compel, and denies plaintiffs' motion for an award of reasonable expenses incurred in bringing this motion.

### BACKGROUND

The current discovery dispute has its roots in a falling-out between defendants and their former counsel, Lawrence DiGiulio, Esq., then of the law firm of Damon & Morey. Specifically, defendants and Damon & Morey disagreed about, among other things, the payment of attorneys' fees. As a result of this disagreement, Mr. DiGiulio moved to withdraw as attorney for defendants on November 25, 1997. Item 15. On January 21,

1998, the court granted that motion and acknowledged that Catherine Habermehl, Esq., would take over as counsel for defendants CKG and Charles Stephan. Item 19.

Damon & Morey initially refused to release its records to Ms. Habermehl because of the dispute over unpaid attorneys' fees. Eventually, Ms. Habermehl was forced to bring a motion to permit review of the relevant documents that were in Damon & Morey's possession. *See* Item 21. Rather than issue an order, the court attempted to mediate this dispute informally. Then, in the summer of 1999, Damon & Morey agreed to give Ms. Habermehl access to its files. Although Damon & Morey turned over a number of records, the parties soon learned that there were a number of documents missing. Further complicating matters, Mr. DiGiulio had, by that time, left his position at Damon & Morey and was unavailable to assist in the search for the documents. In light of the number of missing documents, plaintiffs' counsel stated that the produced records did not satisfy their discovery requests. In light of this impasse, the court directed plaintiffs to file a motion to compel by October 1, 1999. Item 24.

Plaintiffs have based their motion to compel on the discovery requests that they served in February of 1997. Item 25, Exh. C. By these discovery requests, plaintiffs had asked defendants to respond to seven Interrogatories and seven Document Demands. Prior to plaintiffs' motion to compel, Ms. Habermehl had served plaintiffs' attorney with an initial response to the discovery demands. Item 25, ¶ 11. In her response, Ms. Habermehl produced a letter in which Charles Stephan provided unsworn answers to plaintiffs' Interrogatories. *See* Item 28, ¶ 13; Item 29, ¶¶ 7, 10, 12, Exh. A, and Exh. C. At that time, Ms. Habermehl also produced several documents that were responsive to plaintiffs' Document Demands. *See id.*

In the present motion, plaintiffs maintain that defendants' initial response, served in June of 1999, was deficient in that it "did not include most of the documents demanded and did not include any responses to Plaintiffs' First Set of Interrogatories." *Id.* ¶ 15. With respect to the Document Demands, plaintiffs insist that defendants had failed to produce all of the "corporate and personal documents of the defendants which contain information related to, *inter alia,* the corporate status of CKG, applicable collective bargaining agreements, [etc.]. . . ." *Id.* ¶ 17.

At oral argument, it became evident that the unproduced documents at issue were contained in three boxes of documents that Charles Stephan had turned over to Damon & Morey in April of 1997. *See* Item 29, ¶¶ 7–11. However, Ms. Habermehl indicated that these documents were missing and that she had been unable to secure them from Damon & Morey. *See* Item 28, ¶¶ 9–14. At that point, the court held an informal telephone conference in an effort to aid in the search. Despite these efforts, representatives from Damon & Morey indicated that the documents still could not be found. This situation changed, however, when Ms. Habermehl contacted the court on February 8, 2000, to relate that the missing boxes of documents had been found, and that she would "immediately review [the documents], make [them] available to [plaintiffs' attorney], and draft a resonse [sic]. . . ." Item 36.

### DISCUSSION

#### I. Request for Sanctions

Rule 37 of the Federal Rules of Civil Procedure provides that "[a] party, upon reasonable notice to other parties . . . may apply for an order compelling disclosure or discovery . . . ." Fed.R.Civ.P. 37(a). Rule 37(b)(2) contains a non-exclusive list of sanctions that may be imposed on a party when the party "fails to obey an order to provide or permit discovery . . . ." The available sanctions under Rule 37(b) include: "An order striking out pleadings or parts thereof, . . . or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party." Fed.R.Civ.P. 37(b)(2)(C). By their present motion, plaintiffs have requested that the court strike defendants' answer because of defendants' failure to comply with their discovery demands.

Here, it is crucial to observe that the court has not yet ordered any party to comply with another party's discovery demands. Again,

Rule 37(b)(2) only enables the court to sanction a party for failure "to obey an order to provide or permit discovery...."[1] The Second Circuit has made it clear that Rule 37(b):

> [A]uthorize[s] a court to dismiss a complaint for violating a court-imposed discovery order, but [the Rule does not authorize the sanction of] ... outright dismissal [where the accused party] ... did not violate any "order" of the court.
>
> The plain language of Rule 37(b) requires that a court order be in effect before sanctions are imposed and we have clearly held that "dismissal under this subdivision [is] improper in the absence of an order."

*Salahuddin v. Harris,* 782 F.2d 1127, 1131 (2d Cir.1986) (quoting *Israel Aircraft Indus., Ltd. v. Standard Precision,* 559 F.2d 203, 208 (2d Cir.1977)) (footnotes omitted).

The present action resembles *Salahuddin* in that the court has not yet ordered defendants to provide or permit discovery. As such, plaintiffs' request that the court strike defendants' answer is premature. Further, the court finds that the absence of a prior discovery order precludes the imposition of any sanctions under Rule 37(b). *See Daval Steel Products v. M/V Fakredine,* 951 F.2d 1357, 1363 (2d Cir.1991) ("Provided that there is a clearly articulated order of the court requiring specified discovery, the district court has the authority to impose Rule 37(b) sanctions for noncompliance with that order.").[2]

## II. Violations of Scheduling Order

Plaintiffs have also argued that sanctions under Rule 37(b) are appropriate because defendants violated the court's scheduling order by failing to respond fully to plaintiffs' discovery demands before September 30, 1997. Item 25, ¶¶ 7, 11, and 20. By making this argument, however, plaintiffs ignore the fact that the court extended the deadline for discovery in January of 1998. Item 19. After indefinitely extending the discovery deadline in January of 1998, the court has not issued another order setting a discovery deadline. Therefore, the court finds that defendants' alleged failure to comply with the court's scheduling order does not provide grounds for imposing the severe sanctions set forth in Rule 37(b).

## III. Plaintiffs' Unanswered Discovery Demands

### A. Interrogatories

Plaintiffs claim that defendants have completely failed to respond to their Interrogatories and that defendants have failed to produce all existing documents that are responsive to their Document Demands. *See* Item 25, ¶¶ 11–15. The court's review of the record reveals that defendants did serve an initial response to plaintiffs' discovery demands in June of 1999. *See* Item 28, ¶ 13; and Item 25, Exhs. C and E (containing copies of plaintiffs' demands and defendants' initial responses). As part of that response, defendants provided unsworn answers to each of plaintiffs' seven Interrogatories. *See* Item 25, Exh. E, pp. 1–2; and Item 29, Exh. C.

Defendants' answers to the Interrogatories, however, are deficient in form because Charles Stephan did not answer under oath. *See* Fed.R.Civ.P. 33(b)(1). Thus, defendants must draft and serve a new set of responses to plaintiffs' Interrogatories. In drafting a new response, defendants shall provide full and complete answers and shall carefully comply with the Federal Rules of Civil Procedure.

---

1. The court, however, recognizes that sanctions under Rule 37(b)(2) may be imposed for failure to comply with *any* kind of discovery order, not just an order issued under Rule 37(a). *See Daval Steel Products v. M/V Fakredine,* 951 F.2d 1357, 1363 (2d Cir.1991) ("The language of Rule 37(b)(2) requires a prior order ... but does not by its terms specifically require an order issued pursuant to Rule 37(a). Consequently, a Rule 37(a) order is merely one of the orders that can trigger sanctions under Rule 37(b)(2).").

2. While courts have the inherent power to sanction parties for abusive litigation practices, the court finds that defendants have not acted willfully or in bad faith by failing to produce the requested information and documents. As such, the circumstances in this case do not warrant sanctions imposed under the court's inherent powers. *See Shamis v. Ambassador Factors Corp.,* 34 F.Supp.2d 879, 887–88 (S.D.N.Y.1999) (noting that courts possess "an inherent power to sanction litigants for abusive litigation practices that are taken in bad faith").

## B. Document Demands

With respect to plaintiffs' unanswered Document Demands, it is the court's understanding that the documents at issue are located in three large boxes that Charles Stephan turned over to Damon & Morey in 1997. Up until quite recently, these three boxes of documents could not be located despite the good faith effort of the attorneys involved. However, Ms. Habermehl recently informed the court that the boxes have been found. If she has not already done so, Ms. Habermehl shall produce the boxed documents, and any other responsive documents, to plaintiffs' attorney.

## IV. Attorneys' Fees

■ Under Federal Rule of Civil Procedure 37(a)(4)(A), if a motion to compel is granted, the party whose conduct necessitated the motion shall be required to pay the reasonable expenses incurred in bringing the motion, including attorneys' fees, unless: (1) the motion was filed without the moving party first making a good faith effort to secure the discovery; (2) the opposing party's nondisclosure, response, or objection was substantially justified; or (3) other circumstances make an award of expenses unjust.

In this case, the court finds that the unique circumstances surrounding this motion would make an award of costs unjust. The court finds that Ms. Habermehl made several good faith attempts to secure the missing documents from Damon & Morey. Despite her persistence, Ms. Habermehl was continually told that the missing documents could not be found. The court does not fault Ms. Habermehl or defendants for the delay in producing the missing boxes of documents. In sum, the confounding nature of defendants' search for the missing documents leads the court to conclude that it would be unjust to award costs based on plaintiffs' motion to compel the missing documents.

■ The issue of plaintiffs' unanswered Interrogatories presents a somewhat different question. It appears that there was nothing to stop defendants from serving properly drafted answers while the search for the missing boxes of documents was ongoing. Yet the court also recognizes that Ms. Habermehl's conduct in this litigation

has not been dilatory or obstructive. Rather, Ms. Habermehl understandably focused her efforts first on securing the relevant files from Damon & Morey and then on searching for the missing boxes of documents. At oral argument, Ms. Habermehl indicated that she had intended to furnish complete answers to the Interrogatories and to produce the missing documents to plaintiffs at the same time. In light of these facts, the court finds that an award of attorneys' fees would also be unjust with respect to the motion to compel answers to the Interrogatories.

In light of the foregoing, the court denies plaintiffs' request that defendants be required to pay the reasonable expenses incurred in making this motion to compel.

## V. Charles Stephan's Alleged Personal Liability

At oral argument, the court pressed plaintiffs' counsel on the issue of whether Charles Stephan could be held personally liable for any contributions that CKG may owe to the plaintiff funds. Plaintiffs' counsel argued that Charles Stephan could face personal liability for any owed contributions. In support of this argument, plaintiffs' counsel subsequently submitted an affirmation and memorandum of law. Items 33–34.

Here, the court only notes that courts from this circuit have held that, under certain circumstances, individual corporate officers may be held personally liable under ERISA for monies owed by the corporation to pension or health care funds. *See Leddy v. Standard Drywall, Inc.*, 875 F.2d 383, 388 (2d Cir.1989); *Sasso v. M. Fine Lumber Co., Inc.*, 144 F.R.D. 185, 190 (E.D.N.Y.1992). As a matter of law, it may be true that corporate officers can be held personally liable under ERISA for contributions to a fund. Yet the *Leddy* and *Sasso* decisions, among others, demonstrate that the question of whether a corporate officer should be held personally liable under ERISA is a question of fact. *Leddy*, 875 F.2d at 387–88; *Sasso*, 144 F.R.D. at 190–91 (discussing factual considerations). The court need not resolve this issue in the context of plaintiffs' present motion.

## CONCLUSION

For the reasons discussed herein, the court denies plaintiffs' motion to strike defendants' answer and grants plaintiffs' motion to compel (Item 25). Therefore, it is further ordered that defendants respond fully and completely to plaintiffs' Interrogatories by serving properly drafted answers within thirty (30) days of this order's filing. It is also ordered that defendants produce to plaintiffs all documents that are responsive to plaintiffs' Document Demands, including all responsive documents contained in the recently recovered boxes of documents, within thirty (30) days of this order's filing. Finally, the court denies plaintiffs' motion for an award of the reasonable costs incurred in making this motion to compel.

So ordered.