UNITED STATES of America,

v.

Antonio PANEPINTO and Peter Nanfria, Defendants.

No. 92 CR 1137.

United States District Court, E.D. New York.

April 12, 1993.

---

MEMORANDUM AND ORDER

NICKERSON, District Judge:

Defendants Antonio Panepinto and Peter Nanfria are charged in Count One with conspiring to embezzle assets of employee welfare benefit funds, 18 U.S.C. § 371, in Count Two with embezzling such assets, 18 U.S.C. § 664, in Counts Three through Six with making false statements in documents required by the Employee Retirement Income Security Act of 1974, 18 U.S.C. § 1027, in Counts Seven through Ten with mail fraud, 18 U.S.C. § 1341, and in Count Eleven with bribing a union official by giving a son a "no-show" job, 29 U.S.C. § 186.

Defendants move for dismissal of the first ten counts of the indictment and for a Bill of Particulars.

I.

In an Introduction and in Count One the indictment alleges, in substance, the following background facts and embezzlement scheme.

Bivona Coat and Suit, Inc. (Bivona) and Valentino Via Venetto, Inc. (Valentino), two garment contracting corporations, are members of the American Cloak and Suit Manufacturers' Association, Inc. (the Association). The wife of Panepinto nominally owns Bivona. Panepinto's father-in-law nominally owns Valentino.

The Association and the International Ladies' Garment Workers' Union (the Union) have entered into a collective bargaining agreement (the Agreement) which, among other things, governs payments to be made to three employee welfare and benefit funds (the Agreement Funds) and two funds created under a trust indenture (the Indenture Funds) (collectively, the Funds).

The Agreement establishes two basic rules regarding contributions to the Funds. When a participating garment contractor (such as Bivona and Valentino) performs work for a manufacturer that also participates in the Agreement, the manufacturer must make contributions to the Funds. But when a participating garment contractor performs work for a non-participating manufacturer,

Mary Jo White, U.S. Atty. (Pamela J. Davis, of counsel), Brooklyn, NY, for U.S.

Salvatore J. Marinello, Mineola, NY, for defendant Antonio Panepinto.

Melvyn K. Roth, Mineola, NY, for defendant Peter Nanfria.

the garment contractor must make contributions to the Funds.

The Agreement also provides that a subsidiary or firm affiliated with a participating garment contracting firm shall be bound by the Agreement. The Agreement provides that a determination of whether a firm is an affiliate shall be guided by:

[F]acts tending to establish any significant connection or interest between [the Employer and any subsidiary or affiliate firms] or tending to establish a plan, scheme, or device by an Employer to avoid or evade the provisions of this agreement by or through such subsidiary or affiliate, directly or indirectly.

Bivona and Valentino are "employers" within the meaning of this section.

Count One states that Panepinto and Nanfria created RO–IG Coat and Suit Corp. (RO–IG) and caused it (rather than Bivona and Valentino) to perform garment contracting work for manufacturers not parties to the Agreement, thereby evading the making of the requisite contributions to the Funds.

## II

Count One alleges that by devising this scheme to evade making contributions to the Funds, defendants conspired to embezzle the assets of an employee welfare benefit fund. Count Two alleges that defendants embezzled such assets, a crime under 18 U.S.C. § 664.

## A

■ Defendants contend that these counts should be dismissed because the indictment does not allege that an "asset" of an employee welfare benefit fund was converted or embezzled. They say that contributions due to such a fund by employers are not "assets" of the fund until they are received.

At first glance defendants' theory appears implausible. Under many employee welfare benefit plans such as the ones here, the employer is entrusted to collect funds on behalf of the plan and to pay those funds to the plan at regular intervals. Defendants theory suggests that 18 U.S.C. § 664 punishes employers who take assets directly from a plan, but leaves unpunished other employers who fraudulently divert assets from reaching a plan.

The wording of the statutory scheme does not require such an anomalous result. Title 18 U.S.C. § 664 provides, in pertinent part, that:

Any person who embezzles, steals, or unlawfully and willfully abstracts or converts to his own use or to the use of another, any of the moneys, funds, securities, premiums, credits, property, or other assets of any employee welfare benefit plan or of any fund connected therewith, shall be fined not more than $10,000, or imprisoned for not more than five years, or both.

Nowhere does the statute define the terms "credit," "property," or "other asset." Nevertheless, the statute plainly evinces an intent broadly to protect the wealth of employee welfare benefit plans. Contrary to defendants' suggestion, the language of the statute, by its terms, does not limit its reach to protecting only wealth already transferred to a welfare benefit plan or its administrators.

This court rejected, in *Pension Benefit Guar. Corp. v. Solmsen*, 671 F.Supp. 938, 946 (E.D.N.Y.1987), a defendant's argument that employee contributions were not "assets" of an employee welfare benefit plan until contributed to the plan. Similarly, in *United States v. Grizzle*, 933 F.2d 943, 946–47 (11th Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 271, 116 L.Ed.2d 223 (1991), the court, relying, among other things, on a Department of Labor regulation, held that withheld employee contributions were "plan assets" even though not actually delivered to the benefit plan. *See* 29 C.F.R. § 2510.3–102.

Two district courts have examined whether the failure to remit an employer (as opposed to an employee) contribution to an employee benefit plan constitutes embezzlement. In *Galgay v. Gangloff*, 677 F.Supp. 295, 300–02 (M.D.Pa.1987), *aff'd*, 932 F.2d 959 (3d Cir. 1991), the court held that because the language of the underlying wage agreement provided that all monies due and owing to the benefit fund were "vested" in the fund, the employer's unpaid contributions were assets of the fund.

In *Young v. West Coast Indus. Relations Ass'n, Inc.*, 763 F.Supp. 64, 74–76 (D.Del. 1991), *aff'd*, 961 F.2d 1570 (3d Cir.1992), an action under the Racketeer Influenced and Corrupt Organizations Act, the court, while agreeing with the *Galgay* court that the wage agreement governed, held that, because the benefit plan did not explicitly indicate that unpaid employer contributions were "vested assets" of the plan, the unpaid contributions were not "assets" of it.

It seems evident that the question of when an employer's contribution becomes an "asset" of a plan must be determined by reference to the rights and obligations created by the underlying wage agreement. This court respectfully declines to follow the *Young* court insofar as it suggests that only if the agreement uses the word "vested" are withheld employer contributions to be considered "assets."

Here, the Agreement provides in Article 32 for employer payments to the Agreement Funds, and in Article 33 for employer payments to the Indenture Funds. Sub-article (A)(17) of Article 32 provides, in pertinent part, that:

> Neither the Associations as such nor any Employer shall have any legal or equitable right, title or interest in or to any sum paid by or due from the Employer ... and of said benefit funds.

If the employer has no legal interest in any amounts he received that are "due to" the funds, then plainly the Agreement makes these amounts "assets" of the funds.

Article 33 provides that the employer shall pay a percentage of gross weekly wages to the Indenture Funds by a fixed time each month. While this article does not repeat the language quoted above, it contains no wording suggesting that the Indenture Funds' right to the unpaid employer contributions is conditional or contingent. Moreover, defendants have offered no basis for interpreting Article 33 to mean that the employer retains a legal or equitable interest in the unpaid employer contributions. The court holds that those unpaid employer contributions, too, are "credits," "property," or "other assets" of the Indenture Funds.

Defendants contend that, under the rule of lenity, if the collective bargaining agreement is unclear as to whether unpaid employer contributions constitute "credits," "property," or "other assets" of the Funds, "any ambiguity in interpreting § 664 by reference to the agreement should be resolved in the defendant's favor." The court finds no lack of clarity in the underlying wage agreement. Defendants may not simultaneously concede, as they have done here, that an employer has no " 'legal or equitable right' to monies which should have been contributed to the plan," yet convincingly contend that the Fund's claim to these monies is uncertain or ambiguous.

Assuming that RO–IG is shown to be an affiliate or subsidiary of Bivona or Valentino and is therefore an "employer" bound to the terms of the Agreement, the court concludes that employer contributions withheld from the Funds constitute "credits," "property," or "other assets" within the meaning of 18 U.S.C. § 664.

B

■ Defendants say they did not "embezzle" assets from the Funds but at worst merely breached their contract with the Union.

Were the Agreement an ordinary contract for the payment of wages, perhaps defendants could be held only in a civil action. But here the amounts agreed upon as destined for the Funds were held in trust by the defendants for the benefit of others. Moreover, in order to preserve the pension and welfare benefit assets of employees and recognizing the potential for fraud where employers act as intermediaries between employees and welfare benefit funds, Congress has chosen pervasively to regulate benefit plans, and those who hold assets under them, by enacting the Employee Retirement Security Act of.1974 (ERISA), 29 U.S.C. §§ 1001–1461.

A central feature of ERISA is to make a person "a fiduciary with respect to a plan" if that person "exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management

or disposition of its assets." 29 U.S.C. § 1002(21)(A)(i).

Once the defendants knowingly failed to make required contributions to the Funds, they exercised control respecting the disposition of the assets of an employee welfare benefit plan. They held those funds as fiduciaries, and under 29 U.S.C. § 1104(a)(1), they were required to discharge their duty "solely in the interest of the participants and beneficiaries" of the Funds.

The indictment alleges that defendants conspired to convert and did convert these funds which had been entrusted to their care by nonparticipating manufacturers. Such conversion by one to whom assets have been entrusted constitutes embezzlement within the meaning of 18 U.S.C. § 664. The indictment alleges the requisite elements in Counts One and Two.

## III

Counts Three through Six allege that in 1988, 1989, 1990, and 1991, defendants knowingly and wilfully made false statements in monthly contractor remittance and voucher statements required under ERISA. Counts Seven through Ten allege that defendants committed mail fraud in each of those years when they caused such statements to be mailed.

■ Defendants seek to dismiss each of these counts, contending that they are each "bottomed on the proposition that RO–IG is an affiliate or subsidiary of Bivona and Valentino" and that the indictment is "devoid of any factual allegations demonstrating the nature of the alleged relationship between these firms."

The Introduction to the indictment, consisting of the first nine paragraphs, provides background information relevant to all counts. Paragraph 3 states that RO–IG was nominally owned by Nanfria, and was located at the same address as Valentino. Paragraph 12 (contained within Count One) alleges that Panepinto and Nanfria

and their co-conspirators created RO–IG under the nominal ownership of the defendant NANFRIA. RO–IG, rather than Bivona or Valentino, performed contracting work for nonparticipating and noncontri-

buting manufacturers and jobbers, and defendants thereby avoided making contributions to the Agreement Funds and the Indenture Funds.

The paragraphs introducing each of Counts Three through Ten reallege and incorporate paragraphs 1 through 9, but they do not reincorporate paragraph 12.

But the indictment, taken as a whole, plainly alleges facts tending to establish a "significant connection or interest" among RO–IG, Bivona and Valentino, and "tending to establish a plan, scheme, or device by an Employer to avoid or evade" the Agreement by or through a subsidiary or affiliate.

Defendants' motion with respect to Counts Three through Ten is denied.

## IV

■ Defendants request a Bill of Particulars because, they say, the indictment fails to explain the essential theory of the case, namely, that RO–IG is an alleged affiliate or subsidiary of Bivona and Valentino.

The indictment alleges facts sufficient to enable the defendants adequately to understand the charges, to avoid unfair surprise at trial, to prove double jeopardy if they are later charged with the same crime, and to prepare a defense. *United States v. Cafaro,* 480 F.Supp. 511, 517 (S.D.N.Y.1979); *United States v. Mannino,* 480 F.Supp. 1182, 1185 (S.D.N.Y.1979).

Contrary to defendants' contentions, the indictment alleges that the defendants created RO–IG to avoid making contributions to the Funds. The government need not disclose its evidence or its legal theory, and need not " 'describe the precise manner in which the crime . . . is alleged to have been committed.' " *United States v. Schwimmer,* 649 F.Supp. 544, 550 (E.D.N.Y.1986) (quoting *United States v. Andrews,* 381 F.2d 377, 377–78 (2d Cir.1967), *cert. denied,* 390 U.S. 960, 88 S.Ct. 1058, 19 L.Ed.2d 1156 (1968)).

## V

In summary, defendants' omnibus motions are denied in all respects. So ordered.