**UNITED STATES of America,**

v.

**Clarke LASKY, Defendant.**

**No. CR 97–127 (ADS).**

United States District Court,
E.D. New York.

June 10, 1997.

Zachary W. Carter, U.S. Attorney, E.D.N.Y. by Joseph R. Conway, Asst. U.S. Attorney, Brooklyn, NY, for U.S.

Stephen P. Scaring, P.C., Garden City, NY (Stephen P. Scaring, James E. Neuman, of counsel), for Defendant.

### MEMORANDUM DECISION AND ORDER

SPATT, District Judge.

The defendant, Clarke Lasky (the "defendant"), was charged by a grand jury on February 6, 1997 in a twelve count Indictment (the "indictment"), with violating 18 U.S.C. § 664 (Counts One and Two), by allegedly embezzling employee health benefit monies, and 18 U.S.C. § 1341, by utilizing the mails in furtherance of the alleged fraud (Counts Three through Twelve). The defendant moves to dismiss the first two counts of

the indictment pursuant to Fed.R.Crim.P. 12(b) and for a bill of particulars with regard to the remaining counts pursuant to Fed. R.Crim.P. 7(f), or in the event the application to dismiss is denied, with regard to the entire indictment.

## I. BACKGROUND

The indictment alleges that the defendant was the president and owner of Employee Health Plan Administrators, Inc. (the "EHPA") which maintained an office in Westbury, New York. The indictment further asserts that the EHPA was a corporation operating as a health benefit consultant and administrator, and was a Collective Bargaining Representative on behalf of various employers that had entered into Associate Membership Collective Bargaining Agreements with Local 119, Brotherhood of Industrial Workers ("BIW"). Under this arrangement, the defendant acting as a representative or agent of the employers, was responsible for collecting the health benefit monies from the employer and remitting those monies to BIW (the "BIW Fund"). The BIW Health and Welfare Plan was an employee welfare benefit plan within the meaning of the Employee Retirement Income Security Act of 1974 ("ERISA") and 29 U.S.C. §§ 1002, 1003.

Count One of the indictment charges that on or about and between February 1, 1994 and April 15, 1994, the defendant knowingly, intentionally and willfully embezzled and converted to his own use approximately $500,-000.00 in benefits the defendant collected from various employers and failed to remit to BIW. Count Two of the indictment contains the identical charge with the exception that the time period is February 1, 1995 through April 15, 1995, and the amount of money allegedly embezzled was approximately $250,000.00. Counts Three through Twelve of the indictment charge the defendant with mail fraud premised upon the same series of facts as Count Two.

## II. DISCUSSION

A. *Motion to dismiss*

1. *Standard of review*

Although at one time indictments had to be strictly pleaded, the rule for pleading Indictments has been relaxed for quite some time. *See United States v. Zolli,* 51 F.R.D. 522, 524 (E.D.N.Y.1970) (outlining legal history of indictment pleading). Presently, the pleading requirements of Fed.R.Crim.P. 7(c)(1) ("Rule 7(c)(1)"), which implements the defendant's Sixth Amendment right to know the charges against him, need only be met. Rule 7(c)(1) provides in relevant part that, "[t]he indictment or the information shall be a plain, concise and definite written statement of the essential facts constituting the offense charged." As long as the indictment meets the constitutional requirements mandated by the Fifth and Sixth Amendments, it is sufficient. Those constitutional requirements provide that the indictment (1) inform the defendant of the nature and cause of the accusation, as required by the Sixth Amendment, (2) provide the defendant a basis for ascertaining the scope of the charge in order to prevent against double jeopardy, as required by the Fifth Amendment, and (3) preserve the protection provided by the Fifth Amendment that no person be held accountable for a crime unless upon presentment or indictment by a grand jury. *See United States v. Santeramo,* 45 F.3d 622, 624 (2d Cir.1995); *United States v. Macklin,* 927 F.2d 1272, 1276 (2d Cir.), *cert. denied,* 502 U.S. 847, 112 S.Ct. 146, 116 L.Ed.2d 112 (1991); *United States v. Silverman,* 430 F.2d 106 (2d Cir.1970), *cert. denied,* 402 U.S. 953, 91 S.Ct. 1619, 29 L.Ed.2d 123 (1971).

It is within this legal framework that the Court examines the defendant's motion to dismiss Counts One and Two of the indictment.

2. *Counts One and Two*

Counts One and Two of the indictment charge the defendant with embezzlement of health benefit contributions collected from various employers, which funds were to be forwarded to or deposited with BIW, in violation of 18 U.S.C. § 664 ("Section 664"). Section 664, entitled "Theft or embezzlement from employee benefit plan" provides in relevant part as follows:

Any person who embezzles, steals, or unlawfully and willfully abstracts or converts

to his own use or to the use of another, any of the moneys, funds, securities, premiums, credits, property, or other assets of any employee welfare benefit plan or employee pension benefit plan, or of any fund connected therewith, shall be fined under this title, or imprisoned not more than five years, or both.

▮ The elements of a Section 664 embezzlement claim include:

(1) the unauthorized;

(2) taking or appropriation;

(3) of union benefit plan funds;

(4) with specific criminal intent.

*United States v. Andreen,* 628 F.2d 1236, 1240–41 (9th Cir.1980).

▮ The *indictment's introductory* paragraphs claim that EHPA was contractually obligated to "forward the health benefit contributions it collected from the employers to the BIW Fund." Count One of the indictment charges as follows:

> On or about and between February 1, 1994 and April 15, 1994, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant CLARKE LASKY did knowingly, intentionally and unlawfully embezzle, steal and convert to his own use plan assets, arid funds connected therewith, of an employee health benefit plan subject to the provisions of Title I of the Employment Retirement Income Security Act of 1974, to wit: the defendant CLARKE LASKY, in his capacity as president of EHPA and as an authorized collective bargaining representative of employer associate members of Local 119, collected health benefit contributions in the amount of $500,000.00 intended for the BIW Health and Welfare Fund, failed to remit payments to BIW, and converted those funds to his own use.

Except for the date and the amount, Count Two is identical to Count One.

The defendant moves to dismiss these counts pursuant to Rule 12(b) on the grounds that the indictment fails to state all the essential elements of Section 664 since the property allegedly embezzled was never actually deposited into, and therefore never became an asset of, the BIW Fund. Because the indictment claims only that the defendant converted and failed to remit fund that he collected and were, pursuant to the contracts, "intended" for the BIW Fund, rather than part of such fund, the defendant maintains that the indictment must be dismissed for failing to charge an essential element of the offense. In the alternative, the defendant maintains that the documentary evidence—consisting of the agreements between the various parties—proves conclusively that the property in question did not constitute "assets" of the BIW Fund, establishing a defense which compels this Court to dismiss the indictment pursuant to Fed.R.Crim.P. 12(b). In sum, the only element that the defendant contends is at issue for the sole purpose of this motion to dismiss, is whether the monies, at the time of the alleged embezzlement and conversion, were plan "assets".

While noting the absence of statutory definitions of such terms as "credit", "property", and "other assets", the court in *United States v. Panepinto,* 818 F.Supp. 48, 50 (E.D.N.Y.1993), *aff'd,* 28 F.3d 103 (2d Cir. 1994), held that Section 664 "plainly evinces an intent broadly to protect the wealth of employee welfare benefit plans.... the language of the statute, by its terms, does not limit its reach to protecting only wealth already transferred to a welfare benefit plan or its administrators." *Id.* Therefore, as stated in *Panepinto,* the fact that the monies the defendant allegedly embezzled were not yet deposited into the BIW Fund is of no consequence.

▮ The defendant analogizes Section 664 which prohibits the embezzlement of property belonging to employee plans, to the embezzlement of government property under 18 U.S.C. § 641 ("Section 641") under which embezzlement does not exist if the monies do not constitute government property. As to Section 641, the guiding principle in determining the nature of the governmental interest is the relationship between the defendant and the government. Upon examination of the relevant facts, if a defendant is a debtor with monies received as a result of a loan or monies that is otherwise the defendant's

property, rather than a bailee, a defendant's alleged conversion does not violate Section 641. A conviction cannot be sustained absent proof that the property actually belonged to the alleged victim, regardless of whether the property was intended or understood to be for the victim's benefit. *See United States v. Klingler*, 61 F.3d 1234 (6th Cir.1995); *United States v. Lawson*, 925 F.2d 1207, 1209–10 (9th Cir.1991); *United States v. Kristofic*, 847 F.2d 1295, 1296–97 (7th Cir.1988); *United States v. Johnston*, 268 U.S. 220, 45 S.Ct. 496, 69 L.Ed. 925 (1925).

Furthermore, the defendant notes that while no court has yet to determine the precise factual situation presented to this Court where a person is charged with violating Section 664 for failing to remit moneys to an ERISA fund after collecting those moneys from employers for that purpose, several courts have, examined whether an employer can be charged with violating Section 664 for failing to remit moneys. These cases take the uniform approach that the agreements of the parties determine whether the moneys constituted "assets" or "property" of an ERISA fund or "fund connected therewith". *See Galgay v. Gangloff*, 677 F.Supp. 295, 301 (M.D.Pa.1987), *aff'd without op.*, 932 F.2d 959 (3rd Cir.1991) (employer is liable as a fiduciary where agreement stated that "[t]itle to all monies paid into and/or due and owing said fund shall be vested in and remain exclusively in the trustees of the fund"); *In re Consolidated Welfare Fund ERISA Litigation*, 839 F.Supp. 1068, 1073 (S.D.N.Y.1993) (monthly payments required of employers were expressly included within definition of the "trust estate"); *Panepinto, supra*, 818 F.Supp. at 51 (employer contributions considered "assets" of the funds where agreement explicitly provided that the employer had no "legal or equitable right, title or interest in or to any sun paid by or due from the Employer ... and of said benefit funds"); *United States v. Grizzle*, 933 F.2d 943 (11th Cir.), *cert. denied*, 502 U.S. 897, 112 S.Ct. 271, 116 L.Ed.2d 223 (1991) (special duties imposed by ERISA, federal regulations, and the parties' agreements indicate that funds withheld from the employees are plan assets); *Young v. West Coast Industrial Relations Assoc. Inc.*, 763 F.Supp. 64 (D.Del.

1991), *aff'd*, 961 F.2d 1570 (3rd Cir.1992) (employer's failure to contribute did not constitute embezzlement where such failure rendered employer liable for "all arrears in payment", attorneys fees, court costs, liquidated damages and other costs, and where no contractual provision existed indicating when monies paid became vested).

The defendant maintains that Counts One and Two of the indictment do not allege that the health benefit contributions were vested assets of the BIW Fund pursuant to any agreements of the BIW Fund and the employer. Therefore, the defendant contends that, an essential element of the offense is not charged and the indictment must be dismissed. The Court finds the defendant's argument unavailing.

■ In essence, the defendant is requesting that the government's legal theory be set forth in the indictment. On the contrary, the government's specific legal theory is not necessary to be pled in an indictment. The indictment need only give notice of the charges against the defendant. "The government need not disclose its evidence or its legal theory, and need not 'describe the precise manner in which the crime ... is alleged to have been committed.'" *Panepinto, supra*, 818 F.Supp. at 52 (citing *United States v. Schwimmer*, 649 F.Supp. 544, 550 (E.D.N.Y.1986)). In this Court's view, Counts One and Two sufficiently apprise the defendant of the charges against him and satisfy the aforementioned constitutional and pleading standards.

■ In the alternative, the defendant submits that even if the indictment satisfies the pleading requirements, a review of the agreements between the parties conclusively disproves that the monies allegedly embezzled by the defendant were assets of the BIW Fund. The government acknowledges that the contractual language would govern as to whether the monies allegedly embezzled by the defendant were "assets" of the BIW Fund.

Now let's look at the agreements. The following four agreements entered into by the employer, BIW and the defendant, as president of EHPA, define the rights and

remedies between these parties: (1) the Authorization of Collective Bargaining Representative (the "Authorization Agreement") executed by an employer and the defendant, as president of EHPA; (2) the Agreement Between Brotherhood of Industrial Workers Health and Welfare Fund and Collective Bargaining Representatives (the "Fund Agreement") executed by the BIW Fund and the defendant, as president of EHPA; (3) the Associate Member Collective Bargaining Agreement (the "Collective Bargaining Agreement") executed by Local 119 and the defendant, as president of EHPA, on behalf of the employer; and (4) the Amended and Restated Agreement and Declaration of Trust of Brotherhood of Industrial Workers Health and Welfare Fund (the "Declaration of Trust") executed by a representative of the Union, a representative of an employer, and two trustees.

The Authorization Agreement grants the defendant, as president of EHPA, authority to serve as the employer's representative for purposes of negotiating contributions to, and benefits to be provided by, the BIW Fund. Specifically, the Authorization Agreement recognizes EHPA as the agent of the employer. The Fund Agreement sets forth the duties of the defendant with respect to the BIW Fund. The Collective Bargaining Agreement sets forth obligations of the employer and the remedies of the Union with respect to the BIW Fund. Specifically, the Collective Bargaining Agreement provides in relevant part as follows:

> The employer agrees to be bound by the provisions of the Agreement and Declaration of Trust governing the Brotherhood of Industrial Workers Health and Welfare Fund and the interpretations thereof by the Board of the Trustees of the Fund, as the same may be amended from time to time. Decisions of the Board of Trustees of the Brotherhood of Industrial Workers Health and Welfare Fund regarding the application of this Agreement to the Employer and its employees shall be final and binding on all parties.

This provision binds the defendant, as an agent of the employer, to all the terms of the Declaration of Trust. That is significant.

Article II, Section 1 of the Declaration of Trust states:

> *Receipt of Payment and Other Property of Trust.* The Trustees or such other person or entity designated or appointed by the Trustees are hereby designated to receive the contributions made to the Trust Fund by the Employer. The Trustees are hereby vested with all right, title, and interest in and to such moneys and all interest which may be accrued thereon. *All contributions required from an Employer in respect to each payroll period shall, after their due date and until their payment over in full by the Employer to the Trustees, be deemed to constitute a trust fund in the possession of such Employer; and said Employer shall be responsible and liable therefor as a fiduciary.* (emphasis added).

In addition, the Declaration of Trust states that "[n]o employer, or Union, shall have any right, title to or interest in or to the Trust Fund *or any part thereof.*" (emphasis added).

The Court finds that these agreements, when read together, establishes: (1) that the defendant was in the position of the employer; (2) such position makes him subject to the provisions of the Declaration of Trust; (3) the defendant was obligated to collect and remit the employer's monies; and (4) as specified in the Declaration of Trust, the monies in the defendant's possession, from the date they became due until they were remitted to the BIW Fund constitute a trust fund. The creation of such trust fund implies that the rights of BIW to these monies have vested and consequently, the Court finds that the trust fund while in the possession of the employer or an agent of the employer is an asset of the BIW Fund. *See In re Consolidated Welfare Fund ERISA Litigation, supra,* 839 F.Supp. at 1073.

The defendant attempts to undermine the implication of the creation of such trust fund by stating that the commingling of the health benefit contributions, union fees and EHPA's fees strongly suggest that the contributions were not considered "assets" of the BIW Fund at the time they were delivered to EHPA. *See Lawson, supra,* 925 F.2d at 1210 ("when a party is allowed to commingle funds and merely is required to pay the

amount of net auction proceeds to the seller, his status is more properly seen as a debtor rather than a bailee"). The defendant contends that the following provision of the Authorization Agreement provides further proof that the contributions were not "assets" of the BIW Fund:

> [a] failure by ... [EHPA] to remit the Employer's contribution to the ... [BIW Fund] shall only constitute failure by the Employer to comply with the contribution requirement of the ... [collective bargaining agreement], which shall subject the Employer to all rights and remedies of Local 119 and the ... [BIW Fund] as are provided by law.

The defendant contends that because he is a debtor rather than a bailee, no violation of Section 664 exists. The defendant maintains that the trust fund "merely imposes a general, fiduciary duty upon the employers to safeguard the monies they owe to the fund."

In the Court's view, the defendant's arguments may be persuasive in the absence of the contractual provision creating the trust fund. The Authorization Agreement sets forth only the obligations and remedies between the employer and EHPA. It does not supersede the Declaration of Trust's creation of a trust fund. The critical question is whether the monies allegedly embezzled by the defendant constitute "assets" within the meaning of Section 664. The documents governing the relationships between the BIW Fund, the employer and EHPA, clearly establish that the monies given by the employer to EHPA to be remitted to the BIW Fund are "assets" of the BIW Fund. The defendant's motion to dismiss Counts One and Two of the indictment is denied.

## B. *Bill of particulars*

### 1. *Standard of review*

The defendant move for an Order directing the government to serve and file a bill of particulars with regard to the indictment. According to the defendant, the allegations contained in the indictment are vague and uninformative.

■ Requests for bills of particulars are governed by Fed.R.Crim.P. 7(f) which states as follows:

> The Court may direct the filing of a bill of particulars. A motion for a bill of particulars may be made before arraignment or at such later time as the court may permit. A bill of particulars may be amended at any time subject to such condition as justice requires.

According to the Second Circuit:

> A bill is appropriate to permit a defendant to identify with sufficient particularity the nature of the charge pending against him, thereby enabling defendant to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense.

*United States v. Davidoff,* 845 F.2d 1151, 1154 (2d Cir.1988) (quoting *United States v. Bortnovsky,* 820 F.2d 572, 574 (2d Cir.1987)). The decision as to whether the Court will grant a motion for a bill of particulars is "within the sound discretion of the district court." *Davidoff, supra,* 845 F.2d at 1154 (citing *United States v. Panza,* 750 F.2d 1141, 1148 (2d Cir.1984)).

In addressing a motion for a bill of particulars, the Second Circuit has also stated that:

> The function of a bill of particulars is to provide defendant with information about the details of the charge against him, if this is necessary to the preparation of his defense, and to avoid prejudicial surprise at trial.... *A bill of particulars should be required only where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused .... Acquisition of evidentiary detail is not the function of a bill of particulars ....* So long as the defendant was adequately informed of the charges against him and was not unfairly surprised at trial as a consequence of the denial of the bill of particulars, the trial court has not abused its discretion.

*United States v. Torres,* 901 F.2d 205, 234 (2d Cir.), *cert. denied,* 498 U.S. 906, 111 S.Ct. 273, 112 L.Ed.2d 229 (1990) (emphasis added).

In reliance upon such cases as *Bortnovsky, supra, Davidoff, supra* and Fed. R.Crim.P. 7(f), counsel for the defendant provided the government with a demand for particularization of all counts of the indictment. The defendant requests particularization of Counts One and Two so that the government identifies, among other matters: (1) the nature of EHPA's purported rights, responsibilities and obligations with regard to each of the parties involved in the ERISA agreement; and (2) how and when the defendant's conduct fell outside the scope of permissible conduct. As to the ten counts of mail fraud, the defendant requests a bill of particulars on such matters as: (1) when the defendant allegedly directed the mailings or made the alleged misrepresentations; (2) to whom he made the representations; and (3) the nature of the alleged representation. The defendant claims that the indictment is insufficiently particular to satisfy the requirements of the rule and the caselaw and therefore a bill of particulars is required.

On the other hand, the government argues that the defendant has ignored the well established principle that governs requests for bills of particulars. The guiding rule is that in a criminal case, a bill of particulars is not a discovery tool, the government need not provide evidentiary details, and is not intended to allow defendants a preview of the evidence. The government states that a motion for a bill of particulars should be granted only where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused. In this case, the government maintains that the indictment sufficiently informs the defendant of the acts of which he is accused. *See United States v. Payden*, 613 F.Supp. 800, 816 (S.D.N.Y.1985); *United States v. DeFabritus*, 605 F.Supp. 1538, 1547 (S.D.N.Y.1985).

In sum, the government contends that where the indictment provides specific details of the offense, a bill of particulars is unnecessary. *United States v. Torres*, 901 F.2d 205, 234 (2d Cir.), *cert. denied*, 498 U.S. 906, 111 S.Ct. 273, 112 L.Ed.2d 229 (1990); *United States v. Giese*, 597 F.2d 1170, 1180 (9th Cir.), *cert. denied*, 444 U.S. 979, 100 S.Ct.

480, 62 L.Ed.2d 405 (1979); *Leonard*, 817 F.Supp. at 301; *United States v. Payden*, 613 F.Supp. 800, 816 (S.D.N.Y.), *aff'd*, 768 F.2d 487 (2d Cir.1985). The government asserts that the indictment does sufficiently comply with the applicable rules.

The Court agrees. The defendant is attempting to compel the government to disclose its evidence prior to the trial. He will have an opportunity to obtain the discovery to which he is entitled and prior to the required time. The indictment as drawn by the government is an informative, unambiguous, clear, and specific accusatory instrument that informs the defendant of the crimes charged.

Counts One and Two of the indictment sets forth all the elements of the government's charge against the defendant for embezzlement of health benefit contributions collected from various employers. Counts Three to Twelve charge the defendant with mail fraud. These counts list the approximate date of mailing, from and to whom the mail was directed and the content of such mail. The Court finds that the indictment sufficiently advises the defendant of the charges in the indictment so as to enable the defendant to prepare his defense, to avoid prejudicial surprise at trial, and to plead the defense of double jeopardy if subsequently prosecuted for the same offense. The Court finds that the indictment is a clear, detailed and well-drafted accusatory instrument, is specific in its terms and contains the information that the defendant requires to prepare his defense. Accordingly, the defendant's motion for a bill of particulars is denied.

## III. CONCLUSION

Having reviewed the parties' submissions and heard oral argument, and for the reasons set forth above; it is hereby

**ORDERED,** that the defendant Clarke Lasky's motion to dismiss Counts One and Two of the indictment pursuant to Fed. R.Crim.P. 12(b) is denied; and it is further

**ORDERED,** that the defendant Clarke Lasky's motion for a bill of particulars as to

all counts of the indictment pursuant to Fed. R.Crim.P. 7(f) is denied.

**SO ORDERED.**