BARKETT, Circuit Judge,
specially concurring:
I agree that the language of the Agreement and Declaration of Trust is sufficiently ambiguous to require reversal of the summary judgment awarded by the district court. The relevant provision of this instrument specifically states that the Fund includes paid employer contributions and investment income. It then adds to this enumeration “any other property received and held or receivable by the Trustees for the uses and purposes set forth in this Agreement.”
In all likelihood, the quoted clause simply establishes the unremarkable proposition that the Fund’s assets include all property not specifically designated in the preceding clauses, but nonetheless subject to the trustees’ control. One such form of property would be receivables, which is to say legal claims for payment of money due. An employee pension plan that identifies receivables as a type of asset does not thereby create fiduciary obligations on the part of persons with control over the actual funds out of which obligors might satisfy these outstanding claims. Therefore, if the Agreement here reflects only an intent to designate receivables as a type of Fund asset, the Halls cannot be personally liable as fiduciaries for the nonpayment of delinquent employer contributions.
As Judge Birch points out, however, the Agreement refers not simply to “receivables,” a well-worn term of art, but to “property received and held or receivable,” a less familiar construction that gives me enough pause to agree that remand is appropriate. If the Fund is able to produce evidence showing that the parties, which included employer H & R Services, clearly intended by these words to define H & R’s own corporate holdings as Fund “assets” up to any amount due and owing in unpaid employer contributions, then the *1017 Fund’s beneficiaries should have the benefit of.this bargain. See NYSA-ILA Medical & Clinical Servs. Fund v. Catucci, 60 F.Supp.2d 194, 201 (S.D.N.Y.1999). In this instance, fiduciary status would rightly extend to the Halls inasmuch as they exercised control over corporate funds available to satisfy outstanding contribution obligations. Even so, the Halls would not automatically be personally liable for any and all non-payment. See Local Union 2134, United Mine Workers of America v. Powhatan Fuel, 828 F.2d 710, 714 (11th Cir.1987) (shielding company president from personal liability, despite his status as ERISA fiduciary, by holding that he acted in his corporate rather than fiduciary capacity when he made the “business decision” to pay expenses other than employees’ health insurance premiums “in an attempt to keep the corporation from financial collapse”).
I would also clarify that, whatever the intent given effect by the phrase “property received and held or receivable,” the Agreement of course does not accord fiduciary status to persons who never assented to the collective bargaining agreements underlying the Fund’s creation and operation. Yet I believe we must allow for the possibility that employer and employee representatives did intend for fiduciary status to attach in some circumstances to officers with control over the corporate accounts of employers delinquent in their contribution obligations. To assume as a matter of law that no such agreement could be negotiated ignores the unique relationship between employers and the pension funds to which they contribute for the benefit of their employees. Because employers are so often the guarantors of expected retirement incomes, it is easy to understand why unions and other employee organizations might wish to devise a forceful means of holding corporate officers to account for missed payments. I believe it is at least possible that the agreement before us represents one such effort, and I therefore concur in the decision to reverse and remand for the district court to make that determination.